**ASHLEY VULIN,** ID #10498
ashleyvulin@dwt.com
**VERÓNICA MURIEL CARRIONI**, *pro hac vice forthcoming*
veronicamuriel@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
560 SW 10th Ave, Suite 700
Portland, OR 97205
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| ROMAN CATTLE CO., INC.<br><br>            Plaintiff,<br><br>    v.<br><br>PRODUCERS LIVESTOCK MARKETING ASSOCIATION, INC.<br><br>            Defendant. | Case No. 4:25-CV-00703<br><br>**COMPLAINT FOR**<br><br>(1) Violation of the Packers and Stockyards Act<br>(2) Breach of Contract<br>(3) Breach of Express Warranty<br>(4) Unjust Enrichment<br>(5) Violation of the Idaho Consumer Protection Act I.C. § 48-603<br>(6) Setoff, I.C. § 28-2-717; 28 U.S.C. §§ 2201–02<br>(7) Fraud<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Roman Cattle Co., Inc. ("Roman"), for its Complaint against Defendant Producers Livestock Marketing Association, Inc. ("Producers"), alleges and states as follows:

**PARTIES**

1. Plaintiff Roman Cattle Co., Inc. ("Roman") is a Delaware corporation with its principal place of business in Idaho and doing business by purchasing cattle in Idaho, where the tortious acts occurred.

2. On information and belief, Defendant Producer's Livestock Marketing Association ("Producers") is a Utah corporation doing business, selling cattle to Idaho, owning real property in Idaho, and committing tortious acts in the state of Idaho.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and the Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181, *et seq* ("PSA"), as this matter arises under the PSA.

4. Additionally, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Defendant pursuant to I.C. § 5-514(a) and (b) because Defendant transacts business in Idaho with the purpose of realizing a pecuniary benefit or in furtherance of a business objective and it commissioned a tortious act in Idaho. Defendant knowingly entered into the Contract in Idaho with the knowledge that Plaintiff's principal place of business is in Idaho and the Contract would be performed in Idaho. On information and belief, Defendant owns real property in Idaho, including a branch and sale barn located in Jerome, Idaho. Furthermore, Defendant sent over 100 shipments of cattle, including over 29,100 heads of cattle, to a processing facility in Idaho under the terms of the contract between January and September 2025. Defendant's conduct under the Contract and related transactions gives rise to this litigation.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

7. Roman is a cattle dealer, meaning it is engaged in the business of buying and selling cattle for slaughter.

8. Roman would purchase cattle and have it delivered to a slaughterhouse in Idaho for processing. Roman would then sell the beef to distributors and/or retailers.

1        9.     In or around January 2025, Sanin Mirvic and Bruce Parker from Roman met with David Adams, Rick O'Brien, and Robert Morales from Producers to discuss a potential deal whereby Producers would identify and arrange cattle purchases for Roman.

       10.     Roman engaged Producers with the intent of receiving consistently high-quality cattle and to reduce expenses by not purchasing cattle at stockyards (also called "sale barns") but instead by requiring Producers to purchase cattle directly from cattle ranchers or dairy farmers. By purchasing cattle directly from ranchers, Roman would avoid paying additional costs associated with purchases of cattle in sale barns, including third party fees.

       11.     In or around January 2025, Roman and Producers agreed to terms (the "Contract").

       12.     The terms of the Contract as agreed to in January 2025 were as follows:

       a.     Roman would pay Producers for all cattle it supplied to Roman plus a commission of $1.50 per hundred weight (cwt); in other words, $0.15 per live pound.

       b.     All cattle would be purchased directly from ranchers or farmers and no cattle would be purchased from sale barns, including from Producers' own sale barns.

       c.     Producers would ship all live cattle using Roman's preferred vendor, CowTran 2.0. Roman would pay freight prices directly to its vendor and not to Producers.

       13.     In March 2025 Sanin Mirvic and Bruce Parker from Roman met again with Rick O'Brien and Robert Morales from Producers. During that meeting, they agreed that Producers' commission would decrease to $1.00/cwt for live livestock (in other words, live animals, not carcasses).

       14.     Roman and Producers operated using a purchasing process where Roman would tell Producers the number of cattle needed, and Producers would fulfill the order by acquiring cattle and shipping it to Roman.

       15.     Producers then would invoice Roman for the total amount due, which under the terms of the Contract after March 2025 was the price of the cattle plus the $1.00/cwt, determined by multiplying the total weight of the cattle times one cent.

1    16.    A standard invoice from Producers to Roman contained a description of the cows, head count, gross weight, shrink, net weight, average pound per head, total price per hundred weight, and the total amount due.

4    17.    However, the invoices did not show the source of the cattle (whether it was purchased directly from a sale barn or from a rancher), the price Producers paid to the seller of the cattle, the specific amount Roman would be paying in commission to Producers, or any added fees, including third-party commissions. A sample invoice is attached hereto as **Exhibit A**.

8    18.    Producers used its vague invoicing practices to hide the source of the cattle, additional fees, and a higher commission than the parties had agreed.

10    19.    Roman had trusted Producers would fully comply with the terms of the Contract. However, during the course of the relationship and by Producers' own admission, Producers charged commissions above the agreed $1.50/cwt or $1.00/cwt price.

13    20.    In or around June 2025, Producers agreed to additional terms regarding the quality of cattle it would acquire for Roman under the following terms:

15    a.    Producers would deliver high quality cattle, grading at "Choice" grade level or above.

17    b.    Producers would provide a discount for beef that was graded less than "Choice" as follows: a discount of $0.45 per pound for beef graded "Select," and $1.05 per pound for beef that was not graded (designated "no grade" or "no roll").

20    21.    Given that the grading of the beef from slaughtered animals could occur after Roman was obligated to pay Producers for the loads of cattle, the parties agreed Producers would provide the discount as a credit on the next invoice for the next load of cattle ordered by Roman.

23    22.    However, Producers failed to provide the credits on loads that graded below "Choice" level.

25    23.    Over the course of the relationship from January to September 2025, Roman purchased a significant amount of cattle from Producers. Payments from Roman to Producers for

purchased cattle over this time period total over $72 million.

24. On or around September 29, 2025, Roman discovered through an email communication with Producers that Producers had increased the commission from $1.00/cwt to $1.50/cwt without Roman's agreement.

25. Shortly after, Roman requested all the invoices supporting all charges made by Producers to Roman since June 2025 to confirm the charges to Roman were consistent with the terms of the Contract.

26. Producers has delivered some records to Roman, but not all requested records. Since then, Roman has requested all supporting documentation for all purchases by Roman from Producers since January 2025.

27. On or around October 14, 2025, Roman withheld all sums Producers claims Roman currently owed or that would become owed Producers as a setoff for all the improper charges, consisting of invoices dated for the months of September, October, and November (the "Unpaid Invoices"), totaling charges of $11,060,792.82. Roman notified it was disputing the amount and validity of the Unpaid Invoices and that it would withhold all payments until Producers provided all the supporting records justifying its charges.

28. Upon reviewing the records Producers did provide, Roman discovered multiple issues with Producers' performance under the Contract, including the Unpaid Invoices transactions but also the pattern of transactions over the course of the relationship.

    a. Since the beginning of the relationship in January 2025, Producers has repeatedly charged Roman a commission higher than the agreed upon value. Based on the initial review of Producer's records, Producers has overcharged Roman at least $240,000 in commission fees.

    b. Of the cattle Producers supplied to Roman, 51.85% was supplied directly from ranchers, and 49.15% was supplied from other sources, including sale barns. Based on the initial review of Producer's records, as a result of this breach, Roman has incurred

in damages of at least $4,000,000.

    c.    Producers charged Roman third-party fees without Roman's approval and without identifying the third party. Based on the initial review of Producer's records, Producers has improperly overcharged Roman at least $74,000 in third-party fees.

    d.    Producers supplied poor quality beef below "Choice" grade about 50% of the time, as Producers-supplied cattle consistently graded at Select or no grade. This resulted in Roman over-purchasing cattle to pad against inevitable poor grading. In addition, Producers did not apply the discounts for lower quality beef as required, resulting in substantial overcharges to Roman for poor quality beef. Based on the initial review of Producer's records, as a result of these breaches, Roman has incurred in damages of at least $650,000.

    e.    Producers did not ship cattle to Roman using its preferred vendor which Roman already had an agreement with, CowTran 2.0, resulting in additional freight charges to Roman. Based on the initial review of Producer's records, as a result of this breach, Roman has incurred in damages of at least $360,000.

29. Due to Producers' pattern of deceptive conduct, Roman has ceased placing purchase orders with Producers.

30. Producers' deceptive conduct left Roman without necessary cattle supplies and without sufficient and reasonable notice of the same, meaning Roman was unable to fulfill orders with Roman's customers. As a result, Roman lost sales and damaged customer relationships. As a result of this breach, Roman has incurred in damages of at least $4,890,000.

31. In addition, with no cattle to fulfill the orders of its customers, Roman had to stop work at its plant but still had to pay its employees. As a result, Roman has incurred in damages for lost labor of at least $650,000.

**FIRST CLAIM FOR RELIEF**

**Violation of the Packers and Stockyards Act ("PSA")**

32.   Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs of this pleading as if fully set forth herein.

33.   Producers is a "market agency" within the meaning of 7 U.S.C. § 201(c) because it is "engaged in the business of buying or selling in commerce livestock on a commission basis."

34.   As such, Producers is required to abide by the PSA.

35.   Pursuant to 7 U.S.C. § 209, Roman has a private right of action against Producers for violations of the PSA.

36.   The PSA, 7 U.S.C. § 208, prohibits market agencies from establishing, observing, and enforcing unjust, unreasonable, or discriminatory regulation or practice.

37.   Producers engaged in unjust and unfair practices prohibited under 7 U.S.C. § 208 by consistently deceiving Roman into overpaying charges and fees not agreed upon.

38.   Specifically, Producers engaged in the following unfair and deceptive practices over the course of dealing with Roman:

    a.   Producers charged Roman higher commissions than the parties agreed to in their Contract.

    b.   Producers sourced cattle from sale barns, contrary to the parties' Contract and resulting in extra costs and lower grade cattle.

    c.   Producers charged Roman unagreed-to fees, including third party fees and freight charges.

    d.   Producers often supplied cattle graded as "Select" or "no grade," which fell below the agreed "Choice" quality level.  As a result, Roman was forced to purchase more cattle from Producers to make up for the beef that did not meet the required standards, resulting in increased expenses for Roman and more profit for Producers.  Further, Producers then would not issue the agreed credit to Roman in the next load invoice.

  e. Producers used its invoices to cover up these improper charges. Producers' invoicing practices are both unfair and deceptive because they obscure critical information necessary for Roman to validate compliance with the Contract. Producers' invoices hide critical details like the source of the cattle (whether from a sale barn or rancher), the price paid by Producers to the original seller, commissions charged to Roman, and any added fees or third-party commissions.

39. In engaging in these unjust and unfair practices, Producers has compromised the integrity of the marketing process and caused anticompetitive harm, as its actions disrupted transparency, trust, efficiency, and product quality across the cattle supply chain.

40. As a result of Producers' unlawful practices, Roman has sustained damages of at least $10,864,000.

## SECOND CLAIM FOR RELIEF

### Breach of Contract

41. Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs of this pleading as if fully set forth herein.

42. Roman and Producers entered into a valid and enforceable Contract in January 2025 as described in the preceding paragraphs and modified as described.

43. Producers breached the Contract by failing to perform its obligations as agreed by unlawfully charging commission at rates higher than agreed, unlawfully charging third party fees, supplying cattle from unapproved sources, supplying cattle at quality below U.S. Quality Grade "Choice," and by failing to use Roman's preferred freight vendor.

44. Further, Producers' breaches and Roman's necessary cessation of the relationship due to discovery of the same resulted in termination by Producers without sufficient notice to Roman given the parties' course of dealing. This meant meaning Roman was unable to fulfill orders with its customers. As a result Roman lost sales and damaged customer relationships.

45. As a direct and proximate result of Producers' breach of contract, Roman has

1  suffered damages in an amount to be determined by the court, but not less than $10,864,000, for
2  other economic losses to be determined by the court, and non-economic loss, plus all interest and
3  attorney fees.

### THIRD CLAIM FOR RELIEF
### Breach of Express Warranty

6  46.  Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs of
7  this pleading as if fully set forth herein.

8  47.  The contract between Roman and Producers contained express warranties
9  concerning the quality of cattle and procurement source, as alleged in the preceding paragraphs.

10  48.  Producers breached its express warranties by its pattern of deceptive conduct as
11  alleged in the preceding paragraphs, including by sourcing cattle from sale barns or unknown
12  sources, by sourcing low quality cattle, and by failing to issue the agreed credits when cattle graded
13  below "Choice."

14  49.  Roman relied on Producers express warranties when choosing to purchase cattle
15  from Producers, relying in good faith on the terms of the agreement until discovering material
16  discrepancies and breaches.

17  50.  As a direct result of Producers breach of express warranties, Roman suffered
18  significant damages in an amount to be determined by the court, but not less than $10,864,000,
19  and for other economic losses to be determined by the court, and non-economic loss, plus all
20  interest and attorney fees.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment

23  51.  Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs of
24  this pleading as if fully set forth herein.

25  52.  Producers wrongly received monetary benefits from Roman including unauthorized
26  commission, improper third-party fees, overpayment for failure to apply discounts for beef graded

less than Choice, and additional benefits obtained through its dealings with Roman.

53. Roman conferred the monetary benefits to Producers in good faith and under the belief that Producers was acting in accordance with the agreed terms.

54. Roman suffered financial harm because of Producers' wrongfully conferred monetary benefits.

55. Producers' retention of these benefits is unjust and inequitable, and violates the most fundamental principles of justice, equity, and good conscience.

56. Producers remains in possession of funds and benefits to which it is not legally or equitably entitled to in an amount to be determined by the court, but not less than $10,864,000, plus all interest and attorney fees.

**FIFTH CLAIM FOR RELIEF**

**Violation of the Idaho Consumer Protection Act I.C. § 48-603**

57. Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs of this pleading as if fully set forth herein.

58. Roman and Producers are "persons" in "trade" as defined by I.C. § 48-602.

59. The Idaho Consumer Protection Act ("ICPA") provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful." I.C. § 48-603.

60. Private parties are entitled to actual and punitive damages under the ICPA pursuant to I.C. § 48-607 and 48-608.

61. Roman purchased livestock from Producers from January to October 2025.

62. Producers engaged in unlawful, unfair, or deceptive acts in its dealings with Roman in violation of Idaho law in at least the following ways:

    a. Knowingly engaging in misleading, false, or deceptive practices by issuing misleading, false or deceptive invoices to Roman that included misleading, false, or deceptive unauthorized commission increases, hidden fees, and concealing the true costs

and sources of the cattle;

  b. By omitting critical details about the origin of the cattle, Producers caused a likelihood of confusion or misunderstanding regarding whether the cattle had been sourced directly from ranchers as required by the Contract, or improperly from sales barns;

  c. Producers falsely represented that the cattle and procurement services delivered to Roman would adhere to the quality standards and expectations of the Contract;

  d. Producers supplied cattle that consistently fell below the agreed-upon "Choice" grading standard, which was a material misrepresentation of the particular standard, quality, or grade of Producers cattle and procurement services, and then Producers failed to issue the necessary credits for below-grade cattle; and

  e. Producers unilaterally raised agreed-upon commission rates and other charges to be determined without adequate notice to Roman or agreement from Roman, constituting an unfair or deceptive trade practice aimed at overcharging Roman.

63. As a result of Producers' unfair and deceptive acts and practices, Roman suffered ascertainable loss of money, totaling $10,864,000.

## SIXTH CLAIM FOR RELIEF

### Fraud

64. Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs of this pleading as if fully set forth herein.

65. Roman and Producers entered into the Contract with the terms as described in the present Complaint.

66. From January to October 2025, Producers issued invoices to Roman for the cattle Roman purchased including the total amount Producers would charge Roman for each order of cattle. The invoices did not include information showing the source of the cattle, the value of the commission, or additional fees charged.

67. Producers represented that these invoices were accurate and consistent with the

parties' Contract.

68. In issuing these invoices, Producers knowingly hid the improper charges and misrepresented to Roman that it was complying with the terms of the Contract, which explicitly provided Producers would source cattle directly from ranchers and which set a commission of $1.00/cwt as of March 2025.

69. Producers' misrepresentations were material to Roman's payment of the invoices because Roman would not have paid the sums billed had it known Producers was overcharging Roman and sourcing cattle from unapproved sources.

70. Roman hired Producers to source cattle directly from ranchers with the purpose of avoiding cattle coming from sale barns to ensure a better quality of the beef and to avoid unnecessary fees.

71. Producers obscured the information supporting the invoices and intended Roman would rely on Producers' misrepresentations to pay the unlawful charges.

72. Roman did not know Producers was making improper charges.

73. Roman trusted Producers was complying with the terms of the Contract, and, relying on Producers' statements in the invoices, it paid the values charged as it believed these were correct under the Contract.

74. Under the circumstances of this case, Roman was justified to rely on Producers' invoices.

75. Roman suffered damages as a result of its reliance on Producers' fraudulent misrepresentations, totaling $10,864,000.

**SEVENTH CLAIM FOR RELIEF**

**Setoff, I.C. § 28-2-717; 28 U.S.C. §§ 2201–02**

76. Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs of this pleading as if fully set forth herein.

77. An actual and justiciable controversy exists between Roman and Producers regarding the lawfulness and validity of Producers' charges to Roman under the Contract and Producers' invoicing practices and Roman's setoff by withholding payments on certain invoices claimed due and owing by Producers.

78. Roman contends Producers' actions are unlawful and have caused Roman harm.

79. Under I.C. § 28-2-717, "The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."

80. Roman has withheld the amounts Producers claims Roman owes Producers under the Unpaid Invoices as a deduction of damages it has suffered as a result of Producers' failure to comply with the terms of the Contract.

81. On October 14, 2025, Roman notified Producers its intention to withhold the payments for the Unpaid Invoices, totaling $11,060,792.82, as a deduction of damages.

82. Roman seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, that Producers' conduct, as alleged in the present Complaint, constitutes a breach of the Contract and that Roman suffered damages totaling $10,864,000 as alleged in the present Complaint as a result of that breach.

83. Roman further seeks a declaration that Roman has a right under I.C. § 28-2-717 to withhold at least $10,864,000 as a deduction of damages it has suffered as a result of Producers' failure to comply with the terms of the Contract.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in its favor as follows:

A. Declaratory relief as outlined in the Sixth Claim for Relief, allowing Roman to retain the $10,864,000 withheld as a deduction of damages it has suffered.

B. An award of damages to be proven at trial;

| | | |
|---|---|---|
| 1 | C. | Restitution of unjust enrichment profits Producers obtained through unlawfully |
| 2 | | charged commissions; |
| 3 | D. | Disgorgement of any financial benefits Producers wrongfully obtained through its |
| 4 | | unjust enrichment; |
| 5 | E. | An award of attorney's fees as allowed under I.C. § 12-120(3) and I.C. § 48-608; |
| 6 | F. | For an award of costs as the court deems equitable and just under I.C. § 10-1210; |
| 7 | G. | For judgment against Producers for all costs and an award of pre- and post- |
| 8 | | judgment interest as allowed by law; and |
| 9 | H. | For such other and further relief as the Court may deem just or equitable. |

DATED this 15th day of December, 2025.

DAVIS WRIGHT TREMAINE LLP

By: */s/ Ashley Vulin*
ASHLEY VULIN, ID #10498
ashleyvulin@dwt.com
VERÓNICA MURIEL CARRIONI,
*pro hac vice forthcoming*
veronicamuriel@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Ave, Suite 700
Portland, OR 97205
Telephone: (503) 241-2300
Facsimile: (503) 778-5299