UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROMAN CATTLE CO., INC.,

Plaintiff,

vs.

PRODUCERS LIVESTOCK MARKETING ASSOCIATION, INC.,

Defendant.

---

PRODUCERS LIVESTOCK MARKETING ASSOCIATION, a Utah agricultural cooperative,

Counterclaimant,

vs.

ROMAN CATTLE CO., INC. a Delaware corporation,

Counterdefendant.

---

PRODUCERS LIVESTOCK MARKETING ASSOCIATION, a Utah agricultural cooperative,

Third-Party Plaintiff,

vs.

TWO GOOD SONS INC., a Delaware corporation, doing business as AMERICAN FARMERS NETWORK; and SANIN MIRVIC, an individual,

Third-Party Defendants.

Case No. 4:25-cv-00703-DKG

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Currently pending before the Court in the above-entitled matter is Producers Livestock Marketing Association, Inc.'s (Producers) renewed Motion for Default Judgment. (Dkt. 59). The Motion seeks entry of default judgment in the amount of $12,355,499.13 against Plaintiff and Counterdefendant Roman Cattle Co., Inc. (Roman Cattle), Third-Party Defendants Two Good Sons, Inc., d/b/a American Farmers Network (TGS), and Sanin Mirvic (Mirvic) (all of whom are collectively referred to herein as the Mirvic Parties). Also pending are motions to dismiss filed by the Mirvic Parties. (Dkt. 33-35). For the reasons that follow, the Court will grant the motion for default judgment and will deny the pending motions to dismiss. (Dkt. 27, 33, 34, 35).

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a business relationship that went bad. Plaintiff Roman Cattle procured livestock from Producers to be processed at TGS's meat processing and packing plant in Idaho Falls but failed to timely pay for such livestock. Mirvic is CEO of Roman Cattle and President of TGS, and controls operations of the TGS packing facility.

On December 15, 2025, Plaintiff Roman Cattle filed a complaint against Defendant Producers, alleging seven claims: a violation of the Packers and Stockyards Act, breach of contract, breach of an express warranty, unjust enrichment, violation of the Idaho Consumer Protection Act, fraud, and declaratory judgment. (Dkt. 1). On January 20, 2026, Producers filed its original Answer, Counterclaim, and Third-Party Complaint, raising various defenses and counterclaims against Roman Cattle and asserting claims

against Third-Party Defendants TGS and Mirvic. (Dkt. 9). On March 3, 2026, Producers filed its Amended Counterclaim and Amended Third-Party Complaint (Amended Complaint). (Dkt. 25).

In its Amended Complaint, Producers raised eleven claims against the Mirvic Parties: (1) breach of contract against Roman Cattle; (2) enforcement of the Packers and Stockyards Act (PSA) to preserve Trust Assets[1] as required by 7 U.S.C. § 196 against Roman Cattle and TGS; (3) violation of the PSA under 7 U.S.C. §192 for unfair and deceptive practices against Roman Cattle and TGS; (4) violation of the PSA under 7 U.S.C. § 228b for failure to cause Producers to be paid obligations due and owing against Roman Cattle and TGS; (5) violation of the Idaho Consumer Protection Act under I.C. § 48-601 *et seq.* for unfair and deceptive acts against Roman Cattle; (6) unjust enrichment against Roman Cattle; (7) fraud against Sanin Mirvic; (8) piercing the corporate veil as to TGS; (9) injunctive relief against Roman Cattle, TGS, and Sanin Mirvic to prevent dissipation of Trust Assets; (10) breach of fiduciary duty against Sanin Mirvic; and (11) conversion against Roman Cattle, TGS, and Mirvic. (Dkt. 25).

The parties actively litigated until July 7, 2026, when Counsel for the Mirvic Parties moved to withdraw from the case, citing non-payment of legal fees and costs, pursuant to Local Rule 83.6. (Dkt. 47).

---

[1] The PSA defines Trust Assets as "[a]ll livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom", which in turn then must be "held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers." 7 U.S.C. §196(b).

The Court granted the motion to withdraw on July 9, 2026, instructing that the Mirvic Parties would have twenty-one days from the filing of proof of service by the withdrawing counsel to file a written notice stating how and by whom the Mirvic Parties would be represented in the matter moving forward. (Dkt. 50). The Court further warned the Mirvic Parties that if they failed to appear within the twenty-one-day period such failure would be sufficient grounds for entry for entry of default. (Dkt. 50).

The Mirvic Parties have not appeared and the twenty-one-day time period has expired. (Dkt. 50, 51). Producers then filed a motion for default judgment. (Dkt. 53). The Court granted Producers' motion in part, directing the Clerk to enter default against the Mirvic Parties, but denied default judgment as premature because the Mirvic Parties had not been served as required by Rule 55(b)(2). (Dkt. 56). The Court further directed the Clerk to mail a copy of the Order and the Entry of Default to all addresses listed on the Notice of Electronic Filing. (Dkt. 56).

The Clerk entered default against the Mirvic Parties on August 17, 2026, and mailed a copy of the Orders for default and the Clerk's Entry of Default the same day as directed. (Dkt. 58). Certain of the Clerk's mailings were returned undeliverable. (Dkt. 64, 66, 67).

On August 18, 2026, Producers filed the renewed motion for default judgment now before the Court. (Dkt. 59). Producers seek relief under Rule 55(b)(2), as follows: (1) judgment against the Mirvic Parties, jointly and severally, in the amount of $12,355,499.13, as of August 3, 2026, which includes principal of $11,060,792.82 and accrued interest of $1,294,706.31, and which continues to accrue at the per diem amount

of $5,530.40 from August 3, 2026, until judgment is entered; (2) an order directing the Mirvic Parties to immediately account for and pay all Trust Assets to Producers as defined under the PSA; (3) interest on the judgment at the legal rate from the date of judgment until paid in full; (4) a permanent injunction against the Mirvic Parties to prevent dissipation of Trust Assets as defined under the PSA; and (5) a judgment dismissing with prejudice the Mirvic Parties' claims against Producers. (Dkt. 59).

## STANDARD OF LAW

Under Rule 55(b)(2), the court may enter default judgment following entry of default by the Clerk of the Court. Fed. R. Civ. P. 55(b)(2). Upon entry of default, all well-pleaded facts in the complaint are taken as true; however, conclusions of law and allegations of fact that are not well-pleaded will not be deemed admitted by the defaulted party. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). A court's determination to enter default judgment is discretionary; default by a defendant does not automatically entitle a plaintiff to a court-ordered judgment. *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980); *Draper v. Coombs,* 792 F.2d 915, 924-25 (9th Cir. 1986).

In determining whether to grant a default judgment, a court considers the following factors, known as the *Eitel factors*: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring deciding cases on the merits. *PepsiCo, Inc. v. California Security Cans,* 238 F.Supp.2d 1172, 1174-75 (9th Cir. 2002); *Eitel v. McCool,* 782 F.2d

1470, 1471–72 (9th Cir.1986).

The moving party must further prove all claimed damages, as the Court does not accept allegations relating to the amount of damages in the complaint as true. *Geddes v. United Fin. Grp*., 559 F.2d 557, 560 (9th Cir. 1977). The burden on plaintiff to prove damages is "relatively lenient" in the default judgment context. *Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (*overruled on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016). The damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## DISCUSSION

### I. Notice and Hearing

Rule 55(b)(2) provides that a court may enter default judgment against a defaulting party after the party against whom judgment is sought is served with written notice of the application at least seven days before the hearing. However, Rule 55(b)(2) does not require a hearing before the entry of default judgment, and the court has discretion to decide whether a hearing is necessary. Fed. R. Civ. P. 55(b)(2) ("The court *may* conduct hearings").

If the *Eitel* factors favor default judgment, and the record is sufficient, a court may enter default judgment without conducting a hearing regarding the moving party's request. *TCF Inventory Finance, Inc. v. CCB Services, LLC,* No. 2:21-cv-000029-BLW, 2021 WL 3172915, at *2 (D. Idaho July 26, 2021) (citing *Aldabe*, 616 F.2d at 1092); *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (citing proposition that default

judgments for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation); 10 Wright & Miller's *Federal Practice & Procedure* § 2688 (4th ed. 2026) (excusing hearings when sufficient documentation to establish judgment amount exists or when the court is familiar with the litigation and the defendant's conduct).

Here, having reviewed the submissions filed in support of the motion and the entire record herein, the Court finds the record is sufficient to determine the damages and judgment amount without a hearing. Fed. R. Civ. P. 55(b)(2); *see e.g. Allstate Life Insur. Co. v. Markowitz*, 590 F.Supp.3d 1210, 1215 (C.D. Cal. 2022) ("A plaintiff is required to provide evidence of his or her damages, and a court may rely on the declarations submitted by the plaintiff or may order a full evidentiary hearing"). The amount claimed is capable of mathematical calculation and supported by the materials submitted. (Dkt. 59); *Davis*, 650 F.2d at 1161. Holding a hearing would cause further unnecessary delay and prejudice to Producers, as the Mirvic Parties have not appeared as ordered and are unreachable despite multiple attempts by the Court and Producers. (Dkt. 50, 59, 62-67); 10 Wright & Miller, *supra*, § 2688.

Further, all reasonable efforts have been made to notify the parties against whom default judgment is being sought. The Order granting the Motion for Entry of Default and the Clerk's Entry of Default were mailed to the Mirvic Parties at all of their known addresses, some of which were returned as undelivered. (Dkt. 56, 58, 64, 66, 67). Additionally, the motion for entry of default was served upon the Mirvic Parties at all of their known addresses. (Dkt. 59-1 at 28). None of the Mirvic Parties have moved to set

aside the entry of default or responded to the motion for default judgment. Indeed, there have been no filings or participation by the Mirvic Parties since the filing of the motion to withdraw on July 7, 2026. (Dkt. 47, 48). Based on the record, the Court finds that all notice requirements have been satisfied and that no hearing is needed to enter default judgment.

## II. The *Eitel* Factors

Finding notice sufficient and no hearing necessary, the Court next turns to evaluation of the *Eitel* factors. The Court finds that, taken together, the *Eitel* factors favor granting Producers' motion for default judgment based on the reasoning below. (Dkt. 59).

### *a. Possibility of Prejudice to Producers*

Under the first *Eitel* factor, the Court begins by considering whether the moving party will suffer prejudice if default judgment is not entered, lacking other recourse for recovery. *PepsiCo*, 238 F.Supp.2d at 1177. The Court finds that Producers face significant prejudice if default judgment is not entered, as the Mirvic Parties are subject to ongoing litigation and recovery efforts by other creditors[2], creating a strong likelihood that Producers' ability to recover its damages will be delayed and Trust Assets will be dissipated if default judgment is not entered. The Court finds the first factor favors granting default judgment.

### *b. Substantive Merits and Sufficiency of the Complaint*

---

[2] The Court takes judicial notice of relevant court records of other litigation against the Mirvic Parties. *Trigueros v. Adams,* 685 F.3d 983, 987 (9th Cir. 2011). These court records include Bonneville (ID) County Case Numbers CV10-26-4823, CV10-26-4584, CV10-26-3331, CV10-26-2335; District of Idaho Case Numbers 26-cv-00226-DCN and 24-cv-00501-DKG.

Turning next to the second and third *Eitel* factors, the Court analyzes the merits of Plaintiff's substantive claims and evaluates the sufficiency of the complaint[3]. *Eitel*, 782 F.2d at 1471-72. These two factors require that a plaintiff state a claim on which they may recover. *PepsiCo, Inc.,* 238 F.Supp.2d at 1175 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)) (quotations omitted).

To prevail in its first claim of breach of contract against Roman Cattle, Producers must prove that a contract existed, that Roman Cattle breached the contract, that said breach caused damages, and the amount of damages. *Mosell Equities, LLC v. Berryhill & Co.,* 297 P.3d 232, 241 (Idaho 2013).

To prevail in its second claim of enforcement of the PSA trust pursuant to 7 U.S.C. § 196 against Roman Cattle and TGS, Producers must prove that Roman Cattle and TGS violated the statute, which requires that "all livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received." 7 U.S.C. § 196(b).

To prevail in its third claim of violation of the PSA under 7 U.S.C. § 192 against Roman Cattle and TGS, Producers must prove that Roman Cattle and TGS, as packers

[3] Producers' Amended Complaint pleaded eleven claims. (Dkt. 25). Producers' Memorandum in Support of Renewed Application for Default Judgment clarifies that two of the original claims – violation of the Idaho Consumer Protection Act under I.C. 48-601 *et. seq.* and unjust enrichment – were pleaded in the alternative. (Dkt. 59-1 at 16). Because Producers have not set forth these two alternative claims in its pursuit of default judgment, the Court does not address them here.

under the statute, engaged in or used any unfair, unjust, or deceptive practices. *Id; see also* 7 U.S.C. § 228b(c).

To prevail in its fourth claim of violation of the PSA under 7 U.S.C. § 228b against Roman Cattle and TGS, Producers must prove that Roman Cattle and TGS, as packers, failed to deliver to the seller the full amount of the purchase price before the close of the next business day following the purchase of livestock and transfer of possession thereof. 7 U.S.C. § 228b(a); 7 U.S.C. § 223.

To prevail in its fifth claim of fraud against Sanin Mirvic, Producers must prove: a statement or representation of fact; its falsity; its materiality; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent that there be reliance; the hearer's ignorance of the falsity of the statement; reliance by the hearer; justifiable reliance; and resultant injury. *Choice Feed, Inc. v. Montierth,* 481 P.3d 78, 92 (Idaho 2020).

To prevail in its sixth claim of piercing the corporate veil of TGS, Producers must prove that a unity of interest and ownership exists to a degree that the separate personalities of Roman Cattle and TGS no longer exist, and if the acts are treated as acts of Roman Cattle, an inequitable result would follow. *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 514 P.2d 594, 596 (Idaho 1973).

To prevail in its seventh claim of permanent injunctive relief against Roman Cattle, TGS, and Sanin Mirvic, Producers must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate to compensate for that injury; (4) that the balance of hardships warrants a remedy in equity; and (5) that the public interest would not be disserved by a permanent

injunction. *Indep. Training and Apprenticeship Program v. California Dept. of Indus. Relations,* 730 F.3d 1024, 1032 (9th Cir. 2013); *Edmo v. Corizon, Inc.,* 935 F.3d 757, 784 (9th Cir. 2019).

To prevail in its eighth claim of breach of fiduciary duty against Sanin Mirvic, Producers must prove that the defendant owed the various claimants he represents a fiduciary duty and that the defendant breached this duty. *Bushi v. Sage Health Care*, 203 P.3d 694, 699 (Idaho 2009).

To prevail in its ninth claim of conversion against Roman Cattle, TGS, and Mirvic, Producers must prove that the charged party wrongfully gained dominion of property, owned or possessed by plaintiff at the time of possession, which is personal property. *Med. Recovery Services, LLC v. Bonneville Billing and Collections, Inc.,* 336 P.3d 802, 807 (2014).

The Court finds that Producers' Amended Complaint and its exhibits properly set forth a viable cause of action for each of the above claims. (Dkt. 25). The Amended Complaint details that Roman Cattle and TGS are both packers and statutory trustees under the PSA, which imposes a duty to promptly pay, maintain, and preserve Trust Assets in the form of "[a]ll livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom." 7 U.S.C. 196(b). (Dkt. 25, ¶¶ 50-80). It further details how the Mirvic Parties failed to fulfill this statutory duty to pay, maintain, and preserve Trust Assets. (Dkt. 25, ¶¶ 50-80). The Amended Complaint also sets forth that Roman Cattle agreed to pay Producers for livestock procured to Roman Cattle, that Roman Cattle failed

to pay its obligations as agreed, and that this failure caused Producers a net unpaid balance due of $11,588,780.15 in principal. (Dkt. 25, ¶¶ 45-49). The Amended Complaint also demonstrates that Producers are proper beneficiaries of the PSA Trust, thereby entitling Producers to certain assets held in favor of Producers by the Mirvic Parties as Trust Assets, and that Producers have performed and fulfilled duties necessary to preserve their trust benefits. (Dkt. 25, ¶¶ 42-43; 50-80; 102-111). Producers have also set forth a private cause of action under the PSA pursuant to 7 U.S.C. § 209. (Dkt. 25, ¶ 65).

In addition, the Amended Complaint alleges that Sanin Mirvic made knowing misrepresentations of payments to Producers, which Producers relied on, and that Sanin Mirvic owed a fiduciary duty to Producers in his role as controlling officer, director, shareholder, and/or owner of Roman Cattle and TGS, and that Mirvic breached his fiduciary duty by failing to maintain sufficient Trust Assets for the benefit of Producers. (Dkt. 25, ¶¶ 92-101; 122-129). The Amended Complaint further alleges that Roman Cattle, TGS, and Sanin Mirvic knowingly owed the outstanding $11,588,780.15 principal balance to Producers, have failed and refused to pay Producers its entitled payments, and knowingly and intentionally diverted Trust Assets to the Mirvic Parties and unknown third parties. (Dkt. 25, ¶¶ 130-134).

Accordingly, Producers have adequately pled their claims against the Mirvic Parties, satisfying the second and third *Eitel* factors, favoring entry of default judgment.

*c. Amount at Stake*

In evaluating the fourth *Eitel* factor, the Court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo*, 238 F.Supp.2d

at 1176. While substantial, the Court finds that the amount at stake in this case – $12,355,499.13 plus interest – properly reflects Producers' damages, given it is the actual amount of the contractual obligations owed by the Mirvic Parties plus interest due on those obligations and appropriately addresses the Mirvic Parties' conduct. To the extent the Mirvic Parties dispute the amount, they may move the Court to set aside judgment. Fed. R. Civ. P. 55(c), 60(b). For these reasons, the Court finds that the fourth factor favors default judgment.

*d. Possibility of Dispute Concerning Material Facts or Excusable Neglect*

The fifth and sixth *Eitel* factors consider the possibility of dispute as to any material fact in the case or the possibility of excusable neglect. Taking all well-pleaded facts in the complaint as true upon entry of default, there is no evidence of a possible disputed material fact or meritorious defense by the Mirvic Parties. *See PepsiCo,* 238 F.Supp.2d at 1177. And because the Mirvic Parties have failed to appear after six months of active litigation and explicit warnings from the Court, the possibility of excusable neglect is remote. (Dkt. 50, 56); *Fair Housing of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002). The Court finds that the fifth and sixth *Eitel* factors favor default judgment.

*e. Policy for Deciding on the Merits*

Considering the final *Eitel* factor, while cases "should be decided upon their merits whenever reasonably possible," the Mirvic Parties' failure to appear and defend in the instant action has made it impossible to do so. *Eitel*, 782 F.2d at 1472; *see also Kloepping v. Fireman's Fund*, No. C94-2684TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). This factor, like the others preceding it, favors default judgment.

## III. Relief Sought

Finding that the *Eitel* factors, taken together, favor default judgment against the Mirvic Parties, the Court next turns to the remedies sought by Producers. (Dkt. 59). Under Rule 8(a)(3), Plaintiffs' demand for relief must be specific. *PepsiCo*, 238 F.Supp.2d at 1177. Here, Producers seek a number of specific remedies against the Mirvic Parties. (Dkt. 59).

### *a. Judgment against the Mirvic Parties*

First, Producers seek judgment against the Mirvic Parties, jointly and severally, in the amount of $12,355,499.13, as of August 3, 2026, comprised of the principal amount of $11,060,792.82 and accrued interest of $1,294,706.31, and which continues to accrue at the per diem amount of $5,530.40 from August 3, 2026, until judgment is entered.

Allegations regarding the amount of damages must be proven for the Court to enter default judgment. *Geddes,* 559 F.2d at 560. In support of its motion, Producers relied on figures set forth in its Amended Complaint, Motion for Default Judgment, and associated affidavits and declarations, from which the amount of damages can be ascertained. (Dkt. 25, 59, 60, 61). Producers also provided invoices representing unpaid amounts and the interest rate term of 18% per annum as agreed to by the Mirvic Parties, an itemized balance sheet showing the net unpaid balance due to Producers for the purchase of cattle after all lawful offsets and credits have been allowed, and the declaration of Rick O'Brien, Producers' President, attesting to the foregoing. (Dkt. 60, Dkt. 60, Ex. A, B). Based on this record, the Court finds that damages are readily ascertainable according to the figures and amounts provided in Producers' submissions to

the Court.

*b. A Permanent Injunction*

Second, Producers seek a permanent injunction against the Mirvic Parties to prevent further dissipation and diversion of Trust Assets as defined and protected by 7 U.S.C. § 196(b). *See supra note 1.*

To secure a permanent injunction, Producers must demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate to compensate for that injury; (4) that the balance of hardships warrants a remedy in equity; and (5) that the public interest would not be disserved by a permanent injunction. *Indep. Training and Apprenticeship Program,* 730 F.3d at 1032; *Edmo,* 935 F.3d at 784; Fed. R. Civ. P. 65(d).

Injunctions must meet the requirements of Fed. R. Civ. P. 65(d), and injunctive relief must be "narrowly tailored to avoid the irreparable harm" identified by the court. *Natl. Wildlife Fed. v. Natl. Marine Fisheries Svcs.,* 886 F.3d 803, 823 (9th Cir. 2018) (citing *Scott v. Pasadena Unified Sch. Dist.,* 306 F.3d 646, 653 (9th Cir. 2002). The court has equitable discretion to grant or deny permanent injunctive relief, reviewable on an appeal for abuse of discretion. *eBay Inc. v. MercExchange, LLC.,* 547 U.S. 388, 391 (2006).

Here, as to the first factor, the Court finds that Producers have demonstrated actual success on the merits. Producers have set forth that Roman Cattle and TGS are trustees under the PSA, that both entities are directed by Mirvic, and therefore all three parties have a duty to hold and preserve the Trust Assets in trust for Producers' benefit until

Producer has been paid in full. (Dkt. 25, ¶¶ 45-80). Producers perfected its claim to Trust Assets by timely filing its statutory trust claim under 7 U.S.C. § 206 to protect and preserve its rights as unpaid sellers of livestock under 7 U.S.C. §§ 196(b) and 228b. (Dkt. 25, ¶ 42; Dkt. 25, Ex. G). The Mirvic Parties have failed to uphold their statutory duty to hold and preserve Trust Assets by using Trust Assets for their own purposes, including purchasing a packing plant in Nebraska, and diverting Trust Assets for their own use and/or to unknown third parties, implicating Producers' priority security interest under 7 U.S.C. § 196(b). (Dkt. 25, ¶¶ 27, 28, 59, 60). The Court finds, based on this record and the Mirvic Parties' liability as established by the foregoing default judgment analysis, that Producers have demonstrated actual success on the merits. *Edmo,* 935 F.3d at 784.

As to the second factor, the Court finds that Producers have suffered an irreparable injury. While the Mirvic Parties' failure to hold and preserve Trust Assets has caused Producers ascertainable monetary damages, the Mirvic Parties' payment misrepresentations, delays, and obligations due have also caused Producers delays in being able to pay Idaho feedlots and cattle shippers, creating business strain and cash flow issues. (Dkt. 25, ¶¶ 20; 45-49; 69; Dkt. 31 at ¶¶ 6-7). In addition, Producers are at high risk of losing the ability to collect damages, as the Mirvic Parties have already defaulted and the record suggests they may become judgment proof by insolvency. *See supra* note 2 and accompanying text.

As to the third factor, the Court finds that Producers' remedies at law are inadequate to compensate for its injuries. Where, as here, assets have been or are at risk of dissipation or depletion, injunctive relief is appropriate to protect a party's money

judgment. *In re Estate of Ferdinand Marcos,* 25 F.3d 1467, 1479-80 (9th Cir. 1994) (collecting cases). Producers have demonstrated that the Mirvic Parties are dissipating Trust Assets, and the Court finds, based on the record, that a remedy at law alone is insufficient to preserve Producers' Trust Assets to satisfy a monetary judgment against the Mirvic Parties. (Dkt. 25, ¶¶ 27, 28, 59, 60).

As to the fourth factor, the Court finds that the balance of hardships warrants a remedy in equity. The Mirvic Parties' pending litigation before this Court, existing judgments from other courts, and fiduciary misconduct supports injunctive relief to prevent further dissipation and diversion of Trust Assets. (Dkt. 25, ¶¶ 27, 28, 59, 60). *See supra* note 2 and accompanying text. The Court further finds that the Mirvic Parties will not suffer harm from an injunction preventing them from continuing unlawful activity. Based on the record, the Court finds that the balance of hardships favors Producers and entry of a permanent injunction preventing the Mirvic Parties from further dissipating Trust Assets.

As to the fifth factor, the Court finds that public interest would not be disserved by a permanent injunction. Any injunction entered against the Mirvic Parties would bind only those parties, as required by Fed. R. Civ. P. 65(d), and would be narrowly tailored to enjoin only the continued unlawful dissipation of Trust Assets by the Mirvic Parties. *Natl. Wildlife Fed.,* 886 F.3d at 823.

Based on this record, the Court finds that all five factors favor a narrowly tailored permanent injunction to prevent the Mirvic Parties from dissipating or diverting Trust Assets as defined by and in violation of 7 U.S.C. §196(b), including but not limited to

certain assets held by Roman Cattle and/or TGS in favor of Producers on account of cash sales of cattle, which extends to cattle, cattle products, meat, meat products, all accounts receivable, and cash on hand.

*c. Dismissal of Claims*

Third, Producers seek dismissal of the Mirvic Parties' claims against Producers with prejudice. (Dkt. 59).

When a plaintiff fails to prosecute or comply with the Federal Rules of Civil Procedure and court orders, a defendant may move to dismiss the action or any claim against it. Fed. R. Civ. P. 41(b). When considering whether dismissal is warranted, a Court must consider five factors: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to defendants, (4) the availability of less drastic alternatives, and (5) the public policy favoring disposition of cases on the merits. *Guler v. Crypto Traders Management, LLC*, No. 2:21-cv-00116-BLW, 2026 WL 884086, at *2 (D. Idaho March 31, 2026) (citing *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002)).

Here, all five factors support Producers' request for dismissal of the Mirvic Parties' claims with prejudice. As to the first two factors, the Court finds that, like the moving party in *Ash v. Cvetkov*, the Mirvic Parties' noncompliance with the Court's Withdrawal Order (Dkt. 50), has caused the action to come to a "complete halt, thereby allowing [the Mirvic Parties] to control the pace of the docket rather than the court." 739 F.2d 493, 496 (9th Cir. 1984). The public's interest in expeditious resolution of litigation and the Court's interest in managing its docket favor dismissal. Fed. R. Civ. P. 1.

As to the third factor, Producers face significant prejudice if dismissal is not granted, as the Mirvic Parties are not only unreachable and not participating in litigation, but the entities in default are also unrepresented as required by Idaho Local Rule 83.4(d). As to the fourth factor, the Court has made every effort to pursue less drastic alternatives than default judgment and has expressly warned the Mirvic Parties in its Withdrawal Order that failure to appear and secure new representation as required by Idaho Local Rule 83.4(d) would be grounds for dismissal of their claims with prejudice and/or entry of default. (Dkt. 50). And, as to the fifth factor, while public policy favors disposition on the merits, this policy "lends little support" to parties such as the Mirvic Parties who effectively abandon litigation mid-stream. *See Pagtalunan,* 291 F.3d at 643.

Because all five factors favor dismissal, the Mirvic Parties' claims against Producers are dismissed with prejudice.

*d. Piercing the Corporate Veil*

Finally, Producers seek to pierce the corporate veil as to Roman Cattle and TGS. Under Idaho law, the corporate veil may be pierced when (1) "there is such a unity of interest and ownership that the individuality of such corporation and such person has ceased," and (2) it "appear[s] from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *U.S. v. Federal Resources Corp.,* 30 F.Supp.3d 979, 1001 (2014) (citing *Swenson v. Bushman Inv. Props., Ltd.,* 870 F.Supp.2d 1049, 1058 (D. Idaho 2012); *E.E.O.C. v. Burrito Shoppe*

*LLC,* No. CV05-329-S-LMB, 2008 WL 2397678, at *2 (D. Idaho June 10, 2008)).[4]

Here, analyzing the first prong, the Court finds Producers have alleged facts showing that Roman Cattle and TGS share a unity of interest and ownership such that the individuality of Roman Cattle and TGS as separate entities has ceased. *Surety Life Ins. Co. v. Rose Chapel Mortuary, Inc.*, 514 P.2d 594, 596 (Idaho 1973). The facts alleged establish that TGS, not Roman Cattle, paid for livestock procured by Producers, and TGS directed its employees to transact with Producers on behalf of Roman Cattle. (Dkt. 25, ¶¶ 102-111; Dkt. 37, p. 13-16). The allegations reflect that Roman Cattle effectively operated as a shell company for TGS, as Roman Cattle had no employees, no assets, no bank accounts, and was not adequately capitalized. (Dkt. 25, ¶¶ 102-111; Dkt. 37, p. 13-16). The allegations also state that Roman Cattle shared with TGS its leadership and ownership structure and commingled funds. (Dkt. 25, ¶¶ 102-111; Dkt. 37, p. 13-16).

As to the second prong, the Court finds that Producers have alleged facts demonstrating that observance of the fictional separate existence between Roman Cattle and TGS would result in fraud and promote an injustice. *Spencer v. Greenwald,* No. 4:20-CV-00440-BRW, 2021 WL 1976080, at *3 (D. Idaho Jan. 4, 2021). The facts alleged show that Roman Cattle was undercapitalized and commingled funds and other assets with TGS. (Dkt. 25, ¶ 109). These commingled funds were used for Roman Cattle's own expenses, and Roman Cattle and TGS treated each other's funds and assets as its own.

[4] The Court applies the law of the forum state to alter ego claims. *S.E.C. v. Hickey,* 322 F.3d 1123, 1128 (9th Cir. 2003).

(Dkt. 25, ¶109). TGS used Roman Cattle as an instrumentality or conduit for TGS's own deceptive business practices, which were in turn directed by Sanin Mirvic. (Dkt. 25, ¶¶ 94, 109). Failing to pierce Roman Cattle's corporate veil would effectively sanction fraud, as TGS, directed by Sanin Mirvic, is the entity alleged to be responsible for defrauding Producers through knowing payment misrepresentations intended to induce Producers to continue performance. (Dkt. 25, ¶¶ 92-101; Dkt. 60, ¶ 6). The allegations also show that TGS, at the direction of Sanin Mirvic, is responsible for misappropriating and dissipating Trust Assets, an injustice that continues today and can only be remedied by piercing the corporate veil to allow judgment to attach to TGS. (Dkt. 25, ¶¶ 118-121); *Burrito Shoppe,* 2008 WL 2397678, at *4; *Baker v. Kulczyk*, 732 P.2d 386 (Idaho Ct. App. 1987).

For these reasons, the Court finds that Producers have met its burden as to the alter ego theory, justifying piercing the corporate veil as to Roman Cattle and TGS.

**IV. Personal Jurisdiction**

The Court has considered the issue of the Mirvic Parties' specific personal jurisdiction as raised in their motions to dismiss. (Dkt. 34, 35). Having reviewed the entire record, the Court finds that specific personal jurisdiction over the Mirvic Parties is proper.

Roman Cattle's principal place of business is in Idaho. (Dkt. 25, ¶ 8). Roman Cattle procured livestock for Producers in Idaho, at the request of TGS, directed by Sanin Mirvic. (Dkt. 25, ¶ 8). TGS is the alter ego of Roman Cattle. (Dkt. 25, ¶ 8). TGS's business operations in Idaho include harvesting, fabricating, portioning, grinding, and

packaging livestock and cattle. (Dkt. 25, ¶ 8). Sanin Mirvic came to Idaho to meet with Producers to discuss and negotiate agreements for livestock procurement worth millions of dollars, which were then performed in Idaho. (Dkt. 25, ¶ 8). Based on this record, the Court finds that TGS and Sanin Mirvic directed their activities to and purposefully availed themselves of doing business in Idaho. Producers' claims arise from TGS's business operations in Idaho and Sanin Mirvic's forum-related activities. As such, the Court finds it reasonable to subject Roman Cattle, TGS, and Sanin Mirvic to personal jurisdiction in Idaho. *Wells Cargo, Inc. v. Transport Ins. Co.,* 676 F.Supp.2d 1114, 1118-20 (D. Idaho 2009); Idaho Code § 5-514; *Doe v. Deutsche Lufthansa*, 157 F.4th 1103, 1110-11 (9th. Cir. 2025); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985); *Flynt Distrib. Co., Inc. v. Harvey,* 734 F.2d 1389, 1393-94 (9th Cir. 1984).

Accordingly, the Court will deny the Mirvic Parties' motions to dismiss for lack of personal jurisdiction. (Dkt. 34, 35).

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED** that Producers' Renewed Motion for Default Judgment (Dkt. 59) is **GRANTED** as follows:

1. Default judgment is HEREBY ENTERED, jointly and severally, against Roman Cattle Inc., Two Good Sons, Inc., and Sanin Mirvic in the amount of $12,355,499.13, comprised of the principal amount of $11,060,792.82 and accrued interest of $1,294,706.31, plus interest accrued at the per diem amount of $5,530.40 from August 3, 2026, until the date of judgment entered herein.

2. Roman Cattle, Inc. and Two Good Sons, Inc., as statutory trustees under the

PSA, are PERMANENTLY ENJOINED from dissipating or diverting Trust Assets as defined by and in violation of 7 U.S.C. §196(b), including but not limited to certain assets held by Roman Cattle and/or TGS in favor of Producers on account of cash sales of cattle, which extends to cattle, cattle products, meat, meat products, all accounts receivable, and cash on hand.

3. Sanin Mirvic, as the alter ego of Two Good Sons, Inc., is PERMANENTLY ENJOINED from dissipating or diverting Trust Assets as defined by and in violation of 7 U.S.C. §196(b), including but not limited to certain assets held by Roman Cattle and/or TGS in favor of Producers on account of cash sales of cattle, which extends to cattle, cattle products, meat, meat products, all accounts receivable, and cash on hand.

4. Roman Cattle, Inc., Two Good Sons, Inc., and Sanin Mirvic are ORDERED to immediately account for and pay all Trust Assets to Producers as defined and required by 7 U.S.C. § 196(b), including but not limited to certain assets held by Roman Cattle and/or TGS in favor of Producers on account of cash sales of cattle, which extends to cattle, cattle products, meat, meat products, all accounts receivable, and cash on hand.

4. Producers' request for interest on the judgment at the legal rate pursuant to 28 U.S.C. § 1961 from the date of judgment until Producers are paid in full is GRANTED.

5. Roman Cattle, Inc., Two Good Sons, Inc., and Sanin Mirvic's claims against Producers are DISMISSED with prejudice.

**IT IS FURTHER ORDERED AS FOLLOWS:**

1. The pending motions to dismiss are DENIED. (Dkt. 33, 34, 35).

2. The pending motion for judicial notice is deemed MOOT. (Dkt. 27).

3. The status conference scheduled for November 3, 2026, is VACATED.

DATED: October 28, 2026

Honorable Debora K. Grasham
United States Magistrate Judge